IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRANCIS W. HURST, | ) | |
| | ) | |
| Plaintiff, | ) | 4:12CV3250 |
| | ) | |
| v. | ) | |
| | ) | |
| DAN SCARBOROUGH, | ) | MEMORANDUM AND ORDER ON |
| Individually, | ) | DEFENDANT'S MOTION TO |
| | ) | DISMISS |
| Defendant. | ) | |

Francis W. Hurst filed a complaint against Dan Scarborough on December 20, 2012. (ECF No. 1.) Now before me is Scarborough's motion to dismiss Hurst's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 8.) For the following reasons, the motion will be granted in part.

## I.   BACKGROUND

Hurst is a resident of Fairmont, Nebraska, and is approximately 68 years old. (Compl. ¶ 4, ECF No. 1.) Scarborough, who has been sued in his individual capacity only, is the administrator of the Youth Rehabilitation Center (YRC) in Geneva, Nebraska. (Id. ¶ 5.)[1] Hurst began working for the State of Nebraska in February 1963, and at some unspecified time he became the Facility Maintenance Supervisor

---

[1] Although the complaint alleges that the YRC is the "Defendant's" facility, (see Compl. ¶ 8), I infer that it is in fact maintained by the State of Nebraska, (see, e.g., id. ¶¶ 6 (alleging that Scarborough "was acting under color of State law" at all times), 7-8 (implying that Hurst was employed by the State of Nebraska at relevant times)).

1

at the YRC "directly under Defendant Scarborough."  (Id. ¶¶ 7-9.)[2]  Hurst's "evaluations and job performance exceeded expectations," and in 2003 he was named supervisor of the year.  (Id. ¶ 10.)[3]

On July 20, 2009, Scarborough terminated Hurst's employment "for leaving a set of keys in his private automobile while he went into his office to retrieve an invoice to discuss with a vendor downtown."  (Id. ¶ 11.)  Scarborough then hired a "much younger" person to fill Hurst's position.  (Id. ¶ 24.)  Hurst filed a grievance alleging that his termination "was improper under the disciplinary rules of the State of Nebraska Classified [S]ystem."  (Id. ¶ 13.)  He also filed a charge of discrimination with the NEOC and EEOC "alleging age discrimination and retaliation."  (Id. ¶ 14.)  The filing dates for Hurst's grievance and charge are not stated in the complaint.

While the grievance was being reviewed, an unidentified person told Hurst "that if he won the grievance, he would immediately be investigated for alleged improper computer usage."  (Id. ¶ 15.)

On an unspecified date, "the [P]ersonnel [B]oard" held a hearing on Hurst's grievance.  (Id. ¶ 17.)  "[T]he hearing officer and Personnel Board found 'that Appellants [sic] actions were not intentional[;] that he has 46 years of service at the facility[;], that he had been named supervisor of the year in 2003[;] . . . that his area was found to be in compliance with ACA Standards[;] . . . [that] other rules were being openly violated by a majority of the employees, including a rule that the girls

---

[2] The complaint includes allegations suggesting that Hurst worked at the YRC for 46 years, (see Compl. ¶ 17, ECF No. 1), but it does not state the dates when Hurst became Facility Maintenance Supervisor or when Scarborough became Hurst's supervisor.

[3] It is not clear whether Hurst was working under Scarborough when he received the positive evaluations and award.

2

were not to move from building to building unsupervised[;] and [that because] no punishment was being imposed for those rule violations it is apparent that the discipline imposed was a higher level of discipline than fair or necessary.'" (Id.)  In addition, the hearing officer and the Personnel Board "found that the discipline was not imposed for good faith or for just cause and reversed the termination." (Id. ¶ 18.)

On March 18, 2010, the Personnel Board ordered that Hurst "be reinstated to his employment as Facility Maintenance Supervisor and that he be made whole for the salary, benefits, and wage increases that he would have had had his employment not been terminated." (Id. ¶ 19.)  The State appealed the Personnel Board's findings on April 15, 2010, (id. ¶ 20), but it dismissed its appeal on April 29, 2010, (id. ¶ 32). Hurst alleges that he was never served with notice of the appeal.  (Id. ¶¶ 20, 32.)

Hurst returned to work on April 25, 2010, and Scarborough immediately placed him "on 'investigative reassignment' pending an examination into his performance." (Id. ¶¶ 21-22.)  According to Hurst, an "'investigatory [sic] reassignment' is not provided for under Classified System Personnel Rules [or the] policies of the State of Nebraska." (Id. ¶ 26.)  Hurst received no notice of the reasons for the investigative reassignment, nor was there a hearing prior to the reassignment.  (Id. ¶ 27.)  During his reassignment, Hurst was directed "to perform menial tasks including mowing, weed eating, and painting." (Id. ¶ 29.)  Meanwhile, the younger person who had been hired by Scarborough continued to serve as the Facilities Maintenance Supervisor. (Id.)

Hurst filed a grievance regarding his investigative reassignment at some unspecified time.  (Id. ¶ 28.)[4]  Scarborough ignored the grievance.  (Id. ¶ 36.)

---

[4] In his complaint, Hurst alleges that his "reassignment was not based on job performance, but on his age, and in retaliation for his previous complaints of age

On May 10, 2010, Hurst received a "notice of allegations" stating that disciplinary action was being considered against him "for alleged violations of the internet use policy," for "[f]ailure or refusal to comply with a lawful order" in violation of Personnel Rule 14-003.02, for "[f]ailure to maintain a satisfactory working relationship" in violation of Personnel Rule 14-003.03, and for "[i]nsubordinate acts" in violation of Personnel Rule 14-003.14.  (Id. ¶ 33.)  Hurst alleges that the "insubordinate acts" violation was based on "the previous transgression of leaving the keys in his car."  (Id.)  On May 13, 2010, Hurst attended "a mitigation meeting to discuss the above allegations," and he "denied improper personal use of his computer."  (Id. ¶ 34.)

On June 15, 2010, Scarborough demoted Hurst to "Facilities Maintenance Technician II with a reduction in pay from $22.167 per hour to $17.956 per hour."  (Id. ¶ 35.)  After this demotion, Hurst was assigned to work under the younger person who had been serving as the Facilities Maintenance Supervisor.  (Id.)

Hurst alleges that Scarborough intended "to make it unduly difficult" for him "to continue working in the hostile work environment," (id. ¶ 36), and on or about August 2, 2010, Hurst resigned from his position, (id. ¶ 37).  Hurst adds that the wages and other benefits that he lost during the time of his wrongful termination have not been restored to him.  (Id. ¶ 30.)

The complaint states that the foregoing facts provide grounds for a variety of constitutional claims under 42 U.S.C. § 1983.  (See Compl. ¶ 1, 39, ECF No. 1.)  Specifically, Hurst alleges that Scarborough terminated him based on his age in

---

discrimination and [for exercising] his rights to have a grievance hearing." (Compl. ¶ 31, ECF No. 1.)  It is reasonable to infer that the grievance was based on these or similar allegations, though the complaint is not clear on this point.

violation of his due process rights; terminated him "in retaliation for his objections regarding actions he reasonably believed to be matters of public concern including age discrimination and refusal to abide by the personnel board process"; terminated him, demoted him, constructively discharged him, and disciplined him based on his age in violation of his rights under the Fourteenth Amendment's Equal Protection Clause; deprived him of his "property interest in his employment with the State" in violation of the Fifth Amendment's Due Process Clause; and violated his First Amendment rights.  (Id. ¶¶ 39-42.)  In addition, Hurst alleges that Scarborough attempted to coerce him "into not proceeding with his grievance . . . in violation of Title 273 of the Nebraska Administrative Code, Chapter 15.0004," retaliated against him in violation of Revised Statutes of Nebraska § 48-1114(3), and violated the Nebraska Age Discrimination in Employment Act (NADEA), Neb. Rev. Stat. §§ 48-1001 et seq.  (Compl. ¶¶ 45-47, ECF No. 1.)

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of a plaintiff's jurisdictional allegations.  See, e.g., Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): I must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and I must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right

he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." <u>Stalley</u>, 509 F.3d at 521 (citing, <u>inter alia</u>, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007)). (<u>See also</u> <u>infra</u> Part II.B.)  In contrast, "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes." <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 801 (8th Cir. 2002).  Under these circumstances, the plaintiff is not entitled to the benefit of the assumption that his factual allegations are true, and "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 & n.1 (8th Cir. 1993).

In this case, Scarborough has not submitted evidence outside the pleadings for my consideration.  His Rule 12(b)(1) motion will therefore be analyzed using the same standard that applies to Rule 12(b)(6) motions.

### B.    Rule 12(b)(6)

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009).  As noted above, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  Also, although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true

legal conclusions that have been framed as factual allegations.  See id. ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  See also Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 992 (8th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678  (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).  In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

## III.   ANALYSIS

### A.   Scarborough Has Not Been Sued in His Official Capacity

Scarborough argues first that to the extent that he is sued in his official capacity, Hurst's claims against him must be dismissed for lack of subject matter jurisdiction.  (See Def.'s Br. at 6-8, ECF No. 9.)  In response, Hurst clarifies that he "has not alleged a case against the Defendant in his official capacity, only in his individual capacity."  (Pl.'s Response Br. at 18, ECF No. 12.)  Given Hurst's response, Scarborough's argument that this court lacks subject matter jurisdiction

over official capacity claims is moot.

In his reply brief, Scarborough maintains that despite Hurst's response, "a ruling by this court . . . making it clear that the Plaintiff is not able to sue the Defendant in his official capacity . . . would be helpful." (Def.'s Reply Br. at 2, ECF No 13.)  I disagree.  There are no "official capacity" claims in this case, and the matter requires no further analysis.

### B.    Qualified Immunity

Scarborough argues next that Hurst's claims must be dismissed for lack of subject matter jurisdiction because Scarborough is entitled to qualified immunity. (See Def.'s Br. at 6, 9-21, ECF No. 9.)

As a preliminary matter, I note that Scarborough cites no authority holding that the defense of qualified immunity implicates this court's subject matter jurisdiction.  Qualified immunity may be raised in a Rule 12(b)(6) motion, however.  See, e.g., Mathers v. Wright, 636 F.3d 396, 397-402 (8th Cir. 2010); Bradford v. Huckabee, 394 F.3d 1012, 1015-16 (8th Cir. 2005).  I find that this court has subject matter jurisdiction over Hurst's action because the complaint alleges colorable claims arising under the United States Constitution.  See 28 U.S.C. § 1331; Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when []he pleads a colorable claim 'arising under' the Constitution or laws of the United States.").  I shall proceed to determine whether Scarborough "is entitled to qualified immunity on the face of the complaint."  Mathers, 636 F.3d at 399 (citing Bradford, 394 F.3d at 1015).

"A state official sued in [his] individual capacity is entitled to qualified immunity so long as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mathers, 636

F.3d at 399 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).  Thus, I must determine whether the complaint's allegations state a constitutional violation and, if so, whether a reasonable person in Scarborough's position "would recognize as much." Id. at 402.  At this stage of the proceeding, I must make these determinations while "[l]ooking no further than the face of the complaint and accepting as true all allegations therein." Id.

### 1.    Equal Protection

Scarborough argues that he is entitled to qualified immunity to the extent that Hurst's complaint alleges age discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.  (Def.'s Br. at 12-13, ECF No. 9.)  More specifically, Scarborough argues that "Hurst fails to state a cause of action [because] he does not show that he is a member of a protected class" or "that the employee who filled the Facilities Maintenance Supervisor position was in a separate class." (Id. at 13.)  In support of his argument, he recites the elements of a prima facie case of discrimination under Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., and claims that "Hurst would fail this test as he hasn't shown that he is in a protected age group of over 40 years of age."  (Def.'s Br. at 13, ECF No. 9.)

Although "age is not a suspect classification under the Equal Protection Clause," age discrimination may nevertheless provide grounds for an equal protection claim.  Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000).[5]  See also Humenansky v. Regents of University of Minnesota, 152 F.3d 822, 827 (8th Cir.

---

[5] In contrast to race and gender based equal protection claims, age based equal protection claims are subject to a "rationality" standard.  See Kimel, 528 U.S. at 83-84.  See also Batra v. Bd. of Regents, 79 F.3d 717, 721 (8th Cir. 1996).

1998) ("The Equal Protection Clause applies not only to statutes . . . but also to the day-to-day employment decisions of a myriad of state officers and agencies.  But these isolated executive actions are unconstitutional only if they are the product of intentional discrimination that 'fail[s] to comport with the requirements of equal protection.'" (quoting Batra v. Bd. of Regents, 79 F.3d 717, 721 (8th Cir. 1996))). The threshold inquiry, insofar as Hurst's equal protection claim is concerned, is whether Hurst is similarly situated to a younger person who allegedly received preferential treatment. See Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000). See also Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) ("In general, the Equal Protection Clause requires that state actors treat similarly situated people alike.").

As noted previously, Scarborough argues that Hurst cannot satisfy this threshold requirement because he has not alleged that he is a member of a "protected class."  Hurst has alleged that he was more than 40 years old at all relevant times, (see Compl. ¶¶ 4, 7, ECF No. 1); thus, Scarborough's argument that Hurst "hasn't shown that he is in a protected age group of over 40 years of age," (Def.'s Br. at 13, ECF No. 9), is contradicted by the complaint.[6]

Scarborough also argues that Hurst's equal protection claim must be dismissed because Hurst has failed to allege that the "much younger employee" who filled the Facilities Maintenance Supervisor Position "was in a separate class" (i.e., under age 40).  (See Def.'s Br. at 13, ECF No. 9; Def.'s Reply Br. at 4, ECF No. 13.) Scarborough cites no authority holding that age based equal protection claims must involve comparators who straddle the ADEA's "age 40" threshold, however.  In an

---

[6] Scarborough concedes as much in his reply brief.  (See Def.'s Reply Br. at 4, ECF No. 13.)

equal protection case, "the relevant prerequisite is unlawful discrimination, not whether [the] plaintiff is part of a victimized class." Batra, 79 F.3d at 721. I am not convinced that Hurst's allegations that Scarborough preferred a "much younger employee" are insufficient merely because the age of the "much younger" person is not specified in the complaint.

Scarborough argues next that Hurst's equal protection claim must be dismissed because "the ADEA is the exclusive federal remedy for age discrimination." (Def.'s Br. at 26, ECF No. 9.) His argument is supported by several decisions from outside this district. (See id. at 25-29 (citing Ahlmeyer v. Nevada System of Higher Educ., 555 F.3d 1051 (9th Cir. 2009); Lafleur v. Texas Dept. of Health, 126 F.3d 758 (5th Cir. 1997); Britt v. Grocers Supply Co., Inc., 978 F.2d 1441 (5th Cir. 1992); Zombro v. Baltimore City Police Dept., 868 F.2d 1364 (4th Cir. 1989); Kelley v. White, No. 5:10CV288, 2011 WL 4344180 (E.D. Ark. Sept. 15, 2011); Hamilton v. City of Springdale, Arkansas, No. 10-5061, 2011 WL 2560258 (W.D. Ark. June 29, 2011); Dudley v. Lake Ozark Fire Protection Dist., No. 09-4086-CV-C-NKL, 2010 WL 1992188 (W.D. Mo. May 17, 2010); Ring v. Crisp Cnty. Hosp. Authority, 652 F. Supp. 477 (M.D. Ga. 1987); Humphrey v. Nebraska Public Power Dist., 503 N.W.2d 211 (Neb. 1993)).) Although the Eighth Circuit has not directly addressed this issue,[7] this court has previously concluded that the ADEA does not preclude § 1983 equal protection claims alleging age discrimination. Mustafa v. State of Nebraska Dept. of Correctional Services, 196 F. Supp. 2d 945, 955-56 (D. Neb. 2002). I find the courts'

---

[7] I note in passing that the Eighth Circuit analyzed age discrimination claims brought under both the ADEA and Equal Protection Clause in Gregory v. Ashcroft, 898 F.2d 598 (8th Cir. 1990), though it appears that the issue of preclusion was not raised in that case.

11

reasoning in <u>Mustafa</u> and in <u>Levin v. Madigan</u>, 692 F.3d 607 (7th Cir. 2012), <u>cert.</u> <u>granted</u>, 133 S. Ct. 1600 (2013), to be persuasive, and I conclude that Hurst's § 1983 equal protection claim is not precluded by the ADEA.  I shall reconsider this conclusion, however, if the United States Supreme Court resolves <u>Levin</u> while the instant case remains pending.

Finally, Scarborough argues for the first time in his reply brief that "Hurst fails to show that he was similarly situated to persons who received favorable treatment." (Def.'s Reply Br. at 4, ECF No. 13.)  Because Hurst had no opportunity to respond to his argument, it shall be disregarded.[8]

In summary, Scarborough has not shown that Hurst has failed to state a claim that he was replaced by a younger person in violation of the Equal Protection Clause.

## 2.   Due Process

The complaint alleges that Scarborough's actions violated the Fifth Amendment's Due Process Clause because Hurst "had a property interest in his employment with the State which . . . Scarborough has deprived him of without due process of law." (Compl. ¶ 41, ECF No. 1.)  Scarborough argues, correctly, that because the Fifth Amendment's Due Process Clause applies only to the federal government or a federal actor, Hurst's due process claim cannot proceed under that amendment.  (See Def.'s Br. at 13, ECF No. 9.)  See also, e.g., <u>Zutz v. Nelson</u>, 601 F.3d 842, 849 n.4 (8th Cir. 2010).  Hurst responds that the complaint's reference to the Fifth Amendment is "inadvertent," and he "would seek leave to amend to specifically allege a violation of the Fourteenth Amendment[]." (Pl.'s Response Br.

---

[8] Although Scarborough referred to the "similarly situated" component of equal protection claims in his opening brief, he did not argue that Hurst's allegations fail to satisfy it.  (See Def.'s Br. at 12-13, ECF No. 9.)

at 15 n.1, ECF No. 12.)  Hurst's response does not constitute a proper motion to amend the complaint.  See NECivR 15.1(a).  Scarborough states in his reply brief, however, that "Hurst should be permitted" to amend his complaint to correct his mistaken reference to the Fifth Amendment.  (Def.'s Reply Br. at 4-5, ECF No. 13.)  Because the parties appear to be in agreement on this point, I will construe the complaint as alleging a due process claim under the Fourteenth Amendment.  Cf. Fed. R. Civ. P. 15(a)(2) (stating that a party may amend its pleading with the opposing party's written consent).  Hurst need not file a motion to amend his complaint to make this correction.[9]

Scarborough argues next that Hurst's due process claim must be dismissed because the complaint alleges facts showing that "[t]he essential requirements of due process" have been satisfied.  (Def.'s Br. at 14, ECF No. 9.)  Scarborough adds that he "did not violate Hurst's right to due process" because he followed "the Rules and Regulations of the Agency and the State of Nebraska Classified Personnel System."  (Id.)  More specifically, Scarborough states that because he acted within his authority in disciplining Hurst, and because Hurst filed grievances regarding his termination and his investigative reassignment, "there was no violation of due process."  (Id. at 17.)  Finally, Scarborough argues that even if "the processes afforded Hurst were defective, the Court should find that the post-termination grievance processes available to Hurst cured any such defect in the process."  (Id.)

A public employee who has a property right in his employment cannot be deprived of that employment without due process.  E.g., Cleveland Bd. of Educ. v.

---

[9] I note in passing that Hurst's response brief includes other informal requests for leave to amend the complaint.  (E.g., Pl.'s Response Br. at 1, ECF No. 12.)  These requests are denied without prejudice.

Loudermill, 470 U.S. 532, 538-39 (1985). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Id. at 542. The Due Process Clause's "root requirement" has been described "as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Id. (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original) (footnote omitted). However, there are "some situations in which a postdeprivation hearing will satisfy due process requirements." Id. at 542 n.7. See also Gilbert v. Homar, 520 U.S. 924, 930-31, 932 (1997) (describing instance where a sufficiently prompt post-suspension hearing may be adequate to satisfy due process requirements despite paucity of pre-suspension procedures).

As noted previously, the complaint alleges that Hurst was terminated for leaving a set of keys in his car; that he filed a grievance regarding his termination; that a hearing was held on his grievance; and that as a result of this hearing, Hurst's termination was reversed, and he was ordered to be reinstated. (See Compl. ¶¶ 11, 13, 17-21, 32, ECF No. 1.) Hurst does not argue that these procedures failed to satisfy "the essential requirements of due process." (See Pl.'s Response Br. at 12, ECF No. 12.) Instead, he argues that "in order for a hearing to be meaningful the state would have to abide by the ruling of the personnel board." (Id. at 12-13.) I find that because Hurst is not complaining of the notice or opportunity for hearing associated with his termination, he has failed to state a claim that he was discharged in violation of his due process rights. E.g., Kozisek v. Cnty. of Seward, Nebraska, 539 F.3d 930, 937 (8th Cir. 2008) (holding that the plaintiff received all process due because he received notice and an opportunity to be heard); Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001) ("A public employee with a

14

protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review.").

It merits mention, however, that Scarborough's failure "to abide by the ruling of the personnel board," (Pl.'s Response Br. at 12, ECF No. 12), was the subject of a second grievance, (Compl. ¶¶ 22, 26-28, ECF No. 1). Specifically, Hurst alleges that instead of reinstating him to his supervisory position, Scarborough placed him on "investigative reassignment" as a mower and painter. (Compl. ¶¶ 22, 29, ECF No. 1.) He alleges further that he received no notice or opportunity to be heard before the investigative reassignment and that Scarborough ignored Hurst's grievance about the investigative reassignment. (Id. ¶¶ 26-28, 36.) I find that these allegations are sufficient to state a procedural due process claim against Scarborough; thus, Hurst's due process claim remains viable to the extent it is based on the investigative reassignment.

### 3.  First Amendment

The complaint alleges that Scarborough violated Hurst's First Amendment rights by retaliating against him for speaking out on "matters of public concern." (Compl. ¶¶ 39, 42, ECF No. 1.) "To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendant[] responded with adverse action that would 'chill a person of ordinary firmness' from continuing in the activity, and (3) that 'the adverse action was motivated at least in part by the exercise of the protected activity.'" L.L. Nelson Enterprises, Inc. v. Cnty. of St. Louis, 673 F.3d 799, 807-08 (8th Cir. 2012) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). Scarborough argues that Hurst has failed to satisfy the first of these elements. (See

Def.'s Br. at 18-21, ECF No. 9.)

Where, as here, "the government has a employment relationship . . . with a complainant, then the complainant's speech is protected only when it addresses a matter of public concern." Id. at 808. "If an employee does not speak as a citizen, or does not address a matter of public concern, 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" Borough of Duryea, Pennsylvania v. Guarnieri, 131 S. Ct. 2488, 2493 (2011) (quoting Connick v. Myers, 461 U.S. 138, 147 (1983)). "Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cty., 391 U.S. 563, 568 (1968)). To determine whether speech relates to a matter of public concern, "the content, form, and context" of the speech must be considered in light of the entire record. Id. at 2501 (quoting Connick, 461 U.S. at 147-48).[10] See also Dahl v. Rice Cnty., Minnesota, 621 F.3d 740, 744 (8th Cir. 2010).

Scarborough argues that Hurst's First Amendment claim must be dismissed because Hurst did not allege that he spoke on a matter of public concern. (Def.'s Br. at 21, ECF No. 9.) According to Scarborough, Hurst merely alleges that he "filed charges of discrimination and grievances about his personal employment issues,"

---

[10] The same analytical framework applies whether Hurst's claim is based on the First Amendment's Speech Clause or Petition Clause. See Guarnieri, 131 S. Ct. at 2500-01.

which "do not rise to the level of 'protected speech.'"  (Id.)

The filing of an EEOC charge is protected by the First Amendment.  E.g., Tyler v. University of Arkansas Bd. of Trustees, 628 F.3d 980, 986 (8th Cir. 2011) (citing Greenwood v. Ross, 778 F.2d 448, 457 (8th Cir. 1985)).  Because Hurst alleges that he "filed a charge of discrimination alleging age discrimination and retaliation with the NEOC and EEOC," (Compl. ¶ 14, ECF No. 1), I must reject Scarborough's argument that Hurst failed to allege that he engaged in "protected activity."

Scarborough's argument has merit insofar as Hurst's grievances are concerned, however.   As noted above, in order for a public employee to state a claim for violation of his right to freedom of speech, he must demonstrate that the speech is protected by the First Amendment because it addresses a matter of public concern. Lesher v. Reed, 12 F.3d 148, 151 (8th Cir. 1994).  Hurst's complaint includes no allegations showing that when he filed his grievances, he was speaking "as a concerned citizen" as opposed to "an employee."   Id. (quoting Bausworth v. Hazelwood Sch. Dist., 986 F.2d 1197, 1198 (8th Cir. 1993)).  See also Guarnieri, 131 S. Ct. at 2501 ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.").  Indeed, the complaint does not describe the substance of Hurst's grievances at all.  (See Compl. ¶¶ 13-14, 28, ECF No. 1.)  Because there has been no showing that it is plausible that the grievances address a matter of public concern, Hurst's First Amendment claim will be dismissed insofar as it is based on his grievances.

In opposition to Scarborough's motion, Hurst refers me to paragraph 17 of the complaint, which states that after holding a hearing on Hurst's grievance, the Personnel Board found that "other rules were being openly violated by a majority of

17

the employees, including a rule that the girls were not to move from building to building unsupervised." (See Pl.'s Response Br. at 16, ECF No. 12; Compl. ¶ 17, ECF No. 1.)  The Personnel Board also found that because "no punishment was being imposed for those rule violations[,] it is apparent that the discipline imposed [on Hurst] was a higher level of discipline than necessary." (See id.)  Hurst submits that "[a]llowing girls who are detained at the Youth Rehabilitation and Treatment Center to move about without supervision while the Defendant and other administration looks [sic] the other way is the kind of speech that rises to the level of public concern." (Pl.'s Response Br. at 16, ECF No. 12.)  The complaint does not allege that Hurst spoke about these rule violations, however; the unpunished violations were merely cited by the Personnel Board as a justification for its conclusion that Hurst was disciplined too severely.   Even if I infer that Hurst did speak about the unpunished rule violations during his hearing, there are simply no allegations suggesting that Hurst was speaking "as a concerned citizen," and not merely "as an employee" seeking to overturn his own termination.  This leaves the complaint short of the threshold necessary to overcome Scarborough's motion to dismiss. See Lesher, 12 F.3d at 151.

Hurst also argues that his "ability to file a grievance is itself a matter of public concern as evidenced by the codification of the grievance right." (Pl.'s Response Br. at 17, ECF No. 12.)  I agree that Hurst's right to file a grievance implicates the First Amendment's Petition Clause.  As I noted previously, however, Petition Clause claims are analyzed using the same framework as Speech Clause claims, see Guarnieri, 131 S. Ct. at 2493-2501, and therefore it remains Hurst's obligation to allege facts showing that his speech was a matter of public concern in light of its content, form, and context, Lesher, 12 F.3d at 151.  He has failed to meet this burden.

18

In summary, Hurst's First Amendment claim is dismissed insofar as it is based on allegations that Scarborough retaliated against him for filing grievances. The claim remains viable, however, insofar as Hurst alleges that he suffered retaliation for filing a charge with the EEOC.

### 4.   Unspecified Federal Claims

Citing paragraph 47 of the complaint, Scarborough argues that "Hurst's general allegations that Scarborough violated Federal and State laws and the constitution does not nudge Hurst's Complaint across the line so that it states a claim upon which relief can be granted." (Def.'s Br. at 22-23, ECF No. 9.) He adds that the court "should not be required to survey all federal and state law for a possible violation under them in order to create a cause of action." (Id. at 23.)

"A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." Greenwood v. Ross, 778 F.2d 448, 455 (8th Cir. 1985) (citation omitted). I note, however, that in his response brief, Hurst argues that his § 1983 claims are limited to the three separate theories discussed above (i.e., the Equal Protection Clause, the Fourteenth Amendment's Due Process Clause, and the First Amendment). (See Pl.'s Response Br. at 1, 11, 19-20, ECF No. 12.) Scarborough's argument that additional unspecified federal claims must be dismissed is moot; Hurst's state law claims will be discussed below.

### 5.   Whether Scarborough Violated Clearly Established Law

Scarborough argues that he is entitled to qualified immunity on all of Hurst's § 1983 claims because he reasonably believed that terminating Hurst did not violate clearly established law. (Def.'s Br. at 9-12, ECF No. 9.) In support of his argument, Scarborough emphasizes that the termination fell within his discretion as Hurst's supervisor. (Id. at 12.) I find, however, that at all relevant times, it was clearly

19

established that intentional discrimination based on age may violate the Equal Protection Clause, e.g., Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000); that a public employee who has a property right in his employment cannot be deprived of that right without due process, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985); and that retaliating against an employee for filing a charge of discrimination may violate the First Amendment, e.g., Greenwood v. Ross, 778 F.2d 448, 456-57 (8th Cir. 1985).  In short, I am not persuaded that the complaint fails to allege that Scarborough violated clearly established constitutional rights of which a reasonable person would have known.  See, e.g., Mathers v. Wright, 636 F.3d 396, 397-402 (8th Cir. 2010).

## C.   State Law Claims

Scarborough argues that Hurst has failed to state a claim under 273 Nebraska Administrative Code § 15.004 because the complaint does not allege that Scarborough coerced Hurst "into not proceeding with a grievance or not appearing as a witness at a hearing."  (Def.'s Br. at 23-24, ECF No. 9.)  Instead, the complaint merely alleges that an unidentified person told Hurst "that if he won the grievance, he would immediately be investigated for alleged improper computer use."  (Id. (quoting Compl. ¶ 15, ECF No. 1).)  Scarborough also argues that Hurst has failed to state a claim under the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 et seq., because he has not alleged that he filed a timely written charge of discrimination under the NFEPA in accordance with Revised Statutes of Nebraska § 48-1118(2). (Def.'s Br. at 24-25, ECF No. 9.)  In addition, and as noted previously, Scarborough argues that Hurst's "general allegations that some unidentified State . . . laws have been violated" should be disregarded.

20

Hurst has not responded to Scarborough's arguments that the claims based on the Nebraska Administrative Code, the NFEPA, and other unidentified state laws must be dismissed.  (See generally Pl.'s Response Br., ECF No. 12.)  I find that Hurst has failed to allege facts showing that it is plausible that Scarborough violated 273 Nebraska Administrative Code § 15.004.  I also find that the complaint has not alleged facts showing that Hurst's NFEPA claim was timely filed.  See Hassler v. Alegent Health, 198 F. Supp. 2d 1108, 1110-12 (D. Neb. 2002); Adkins v. Burlington Northern Santa Fe R.R. Co., 615 N.W.2d 469, 473-74 (Neb. 2000); Neb. Rev. Stat. §§ 48-1118(2), 48-1119(4), 48-1120.01.  Therefore, Hurst's claims under the Nebraska Administrative Code and the NFEPA will be dismissed.

The complaint states that Scarborough's actions violate the Nebraska Age Discrimination in Employment Act  (NADEA), Neb. Rev. Stat. §§ 48-1001 et seq. (Compl. ¶ 47, ECF No. 1.)  Scarborough has not argued that this claim must be dismissed, and therefore it remains viable.  Hurst's allegations that Scarborough has violated some other unspecified state law will be disregarded, however.

In summary, I find that Hurst's claims that Scarborough (1) terminated him in violation of his due process rights under the Fourteenth Amendment, (2) retaliated against him in violation of the First Amendment for filing grievances, (3) coerced him in violation of 273 Nebraska Administrative Code § 15.004, (4) violated the NFEPA, and (5) violated some other unspecified state law are dismissed.  In all other respects, Scarborough's motion is denied.

21

**IT IS ORDERED** that the defendant's motion to dismiss, (ECF No. 8), is granted in part as explained in the memorandum accompanying this order.

Dated June 10, 2013.

BY THE COURT

Warren K. Urbom
United States Senior District Judge

22